STATE OF IOWA, Appellee, v. TOM GATES, Appellant.

**ARSON: Variance.** Allegations to the effect that a house was occupied by certain persons as a dwelling house, with proof that the upper floors were so occupied, but that the first floor and basement (where the fire occurred) were occupied by the defendant for mercantile purposes, present no fatal variance.

**ARSON: Corpus Delicti.** Principle reaffirmed that, in a prosecution for arson, the *corpus delicti* may be established by circumstantial evidence.

**ARSON: Evidence—Inventory.** An inventory of the property contained in a dwelling house alleged to have been feloniously burned, made by one qualified to judge of the value, is competent and admissible.

**ARSON: Evidence—Motive.** Evidence tending to show a motive is admissible: e. g., testimony tending to show that the defendant was being pressed by his creditors, and that the defendant's business was not prosperous.

**CRIMINAL LAW: Evidence—Accomplices—Rule to Determine.** No occasion arises to treat a witness as an accomplice, in the absence of some fair preponderance of evidence tending to so prove.

*Appeal from Pottawattamie District Court.*—LESTER L. THOMPSON, Judge.

APRIL 1, 1924.

TRIAL on an indictment for arson, resulting in a verdict finding the defendant guilty. Judgment was entered thereon in conformity to law. Defendant appeals.—*Affirmed.*

*Organ & Delitala* and *Jamieson, O'Sullivan & Southard,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,* Assistant Attorney-general, and *Frank E. Northrop,* County Attorney, for appellee.

DE GRAFF, J.—The defendant was charged with setting fire "to a building, known and described as No. 555 West Broadway in the city of Council Bluffs, Iowa, the same being a dwelling house, then and there inhabited by * * * by the

1. ARSON: variance. burning whereof the said building was burned in the nighttime," etc. The indictment charged a crime within the definition of the statute (Code Section 4776), and is legally sufficient.

However, it is contended by appellant that there exists a fatal variance between the proof offered by the State and the allegations of the indictment. This proposition is bottomed on the fact, as disclosed by the evidence, that the building in question was in part occupied by the defendant and in part by others: in other words, that the first floor, occupied by the defendant, was distinct and separate from the inhabited portion on the second floor of said building. This position is untenable. The indictment named a specifically described building. The evidence discloses that it was a two-story brick, with a basement; but the entire structure or building was under one roof, and was within the same four walls. The word "building," within its ordinary and legal signification, includes the basement, as well as the garret, and it necessarily includes all space within the walls from basement to garret. See *State v. Brower,* 127 Iowa 687; *State v. Gibson,* 97 Iowa 416. Statutory arson is essentially different from arson at common law. Under the common-law definition, the building must be the dwelling house of another, and occupancy, not ownership, is the test. Under the common law, however, if a shop or store is also occupied as a dwelling, it is within the definition of arson. 2 Clark & Marshall on the Law of Crimes, Section 411.

The fact that the instant defendant leased and occupied the main floor of the building named in the indictment is but an evidential fact, and a mere incident in the case. It is not a controlling consideration in determining the sufficiency of the

indictment, nor does his occupancy with others create a variance between proof and the allegations of the indictment.

It is also urged that the evidence is insufficient to sustain the verdict. True, this case rests on circumstantial evidence, but the *corpus delicti* may be so proved. *State v. Millmeier,* 102 Iowa 692. Some of the material facts are

2. ARSON: *corpus delicti.* in sharp conflict, but the credibility of the witnesses and the weight of the testimony creating the conflict were matters for the consideration of the jury. Clearly, a jury question was presented, and their finding has ample support in the record.

Briefly stated, the evidence on behalf of the State discloses, and the jury could so find, that the defendant used the main floor of the building in question for the manufacture of ice cream and candy. A trap door led to the basement, and was the only opening from the inside of the building. There was another basement entrance from the outside through double iron doors, which were kept locked, and the janitor of the building carried the key. Several families, including those named in the indictment, occupied the second floor, and a wooden stairway gave access thereto. On the evening in question, about midnight, the defendant gave his clerk, named Fontis, some currency, apparently for safe-keeping, and as it was about closing time, Fontis started to go to the basement to shut off the gas heater, as was his custom. He was told by the defendant not to go down. A little later, Fontis saw the defendant come out of the basement, and upon inquiry as to what he was doing, the defendant replied, ''Nothing.'' When the men were ready to leave the store, Fontis smelled smoke, and asked the defendant where the smoke came from. He replied that there was no smoke. Fontis then left the store, with the intention, as he says, to go across the street for the purpose of calling the police. Defendant left the building through the front door, locked it, and started to go round the corner to his automobile. Police Officer Callaghan, having previously noticed the smoke, walked toward the building and grabbed the defendant as he was going toward his car. He testified:

''I saw a man run out of the front door of the Broadway Candy Store [the building in question] and proceed very rapidly

north. I saw smoke issuing from the building directly after this man had run up the street. I was standing in front of the Majestic Theatre, about 120 feet from the candy store. When I got close to the doorway of the store, the defendant came out by the front door, which he locked. The smoke was rolling out after him, and just as he started to go around the corner, I grabbed him. I asked him whether he was the cause of the fire, and he replied that he knew nothing about it. He broke away from me, and proceeded further south, where I grabbed him again.''

Another police officer corroborates the statements of Callaghan. The fire department had been notified by one of the officers before the defendant was taken into custody. After his arrest, he was taken to the police station, and upon his person were found two watches, four diamond rings, and other jewelry, and a fire insurance policy in his overcoat pocket. Several witnesses testified as to conditions in the basement immediately after the fire was discovered. It is shown that in the south end of the basement was a large pile of rubbish, which was on fire. It burned the supporting timbers of the building and the joists. A pile of cinders and ashes was observed a short distance from the furnace, but there was no fire in the ash pile and no evidence of any fire between the furnace and the rubbish pile. It is further shown that the joists over the ash pile were not charred at all. It is undisputed that the defendant carried $15,500 insurance upon his stock and fixtures. The inventory introduced in evidence disclosed an aggregate value of all property owned by the defendant to be less than $6,000.

Appellant predicates error on the rulings of the court on the admission of certain evidence. One Mathis made an inventory of the merchandise in defendant's place of business immediately after the fire. The inventory was 3. ARSON: evidence: inventory. introduced in evidence over the objection of defendant. The witness had been for many years a salesman for the Woodward Candy Company, and was acquainted with values. He explained the making of the inventory, and it is shown that certain values were entered on the inventory after inquiry by the witness of other persons as to the value. This covered but a minor portion of the articles in-

volved. The rule governing the admission of evidence of opinion as to the value of personal property is well defined, and in the instant case it is shown that the witness had a general knowledge of the merchandise, and by reason of his business and experience was qualified to speak on this subject of values. The weight to be given the testimony was a question for the jury. See *Lundvick v. National Union Fire Ins. Co.*, 128 Iowa 347; *State v. Strum*, 184 Iowa 1165.

It is further claimed that the court erred in permitting Fontis, the defendant's employee, to testify that certain creditors had called at the store prior to the fire, and solicited the defendant to pay the debts owing, and that he had offered excuses, and did not pay. Further objection was made to the testimony of Fontis to the effect that the business of the defendant was not good, prior to the fire. There was no error in the admission of the testimony of Fontis. It related to a matter within his own personal knowledge and observation, and the testimony was relevant to the issue involved. The State is privileged, in a case of this character, to offer evidence bearing on the motive of the defendant. This evidence is in the same category as that offered by the State in proving the amount of fire insurance outstanding against the stock and fixtures, and the value thereof prior to the fire.

4. ARSON: evidence: motive.

It is seriously contended that the trial court should have treated Fontis as an accomplice of the defendant in the crime charged, and should have instructed the jury in this particular. It may be inferred from the evidence that Fontis was in the building when the crime was committed, but something more than mere knowledge that a crime is contemplated or mere personal presence at the time and place where the crime is committed must be shown, to bring a person within the definition of an accomplice. *State v. Bartlett*, 128 Iowa 518. It must be established by a preponderance of the evidence that the witness was in fact an accomplice. *State v. Smith*, 102 Iowa 656. An accomplice has been defined as one of several concerned in a felony; an associate in a crime; one who co-operates, aids, or assists in committing it. *State v. Ean*, 90 Iowa 534. We discover no evidence

5. CRIMINAL LAW: evidence: accomplices: rule to determine.

which warrants the indictment of Fontis for the burning of the building in question, or sufficient evidence in the event of an indictment, that would justify a trial court in submitting the issues to a jury. This is the general criterion, and constitutes a fairly safe test in determining whether a witness is in fact an accomplice, within legal definition. *State v. Duff*, 144 Iowa 142.

In conclusion, no exceptions were taken and preserved, as provided by statute, to the instructions given by the court, and therefore no reviewable question is presented in this regard. *State v. Higgins*, 192 Iowa 201; *State v. Manley*, 197 Iowa 46. However, a reading of the instructions discloses no ground for legal criticism. Upon the whole record, no prejudicial error appears, and the judgment entered is, therefore,—*Affirmed.*

ARTHUR, C. J., STEVENS and VERMILION, JJ., concur.