GARY EUGENE HURST *v.* V & M OF VIRGINIA, INC.
ET AL.

[No. 112, September Term, 1981.]

*Decided June 8, 1982.*

*Motion for reconsideration filed June 18, 1982; opinion modified and as modified motion for reconsideration denied June 25, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Terrell N. Roberts, III* for appellant.

No brief filed for appellees.

SMITH, J., delivered the opinion of the Court. MURPHY, C. J., and COLE, J., dissent. MURPHY, C. J., filed a dissenting opinion at page 588 *infra*, in which COLE, J., concurs.

The question presented in this case is whether the interest of tenants for years in a basement area in the Bethesda

Square Shopping Mall, in which a restaurant and "disco" were constructed, is a "building" within the meaning of Code (1974, 1981 Repl. Vol.) § 9-102(a), Real Property Article. That statute provides in pertinent part, "Every building . . . repaired, rebuilt, or improved to the extent of 25 percent of its value is subject to establishment of a lien . . . for the payment of all debts, without regard to the amount, contracted for work done for or about the building and for materials furnished for or about the building . . . ." Relative to tenants, § 9-103(c)(2) provides in relevant part:

> "If a *building* is erected . . . or improved to the extent of 25 percent of its value, by a tenant for . . . years . . ., any lien established in accordance with this subtitle applies only to the extent of the tenant's interest." (Emphasis added.)

Since we conclude that the complaint, as framed, did not assert a lien against a building within the purview of either statute, the Court of Special Appeals correctly determined in *Hurst v. V & M of Virginia,* 49 Md. App. 571, 433 A.2d 1231 (1981), that a demurrer should be sustained. We are of the view, however, that the lien claimant should be given an opportunity to amend his complaint to state a cause of action, if he can.

Hurst sought a lien against the space which appellees occupied as tenants for years. He contracted with these tenants in September 1979 to improve that area. He completed the job at a total cost in excess of $160,000. Hurst filed a petition to establish and enforce a mechanics' lien after he was not paid in full. He asserted not that he improved the building, but that he "improved Respondents' Property" in an amount "which is greater than 25 percent of its value."

The trial judge (Cahoon, J.) in the Circuit Court for Montgomery County concluded "that to establish a lien on this property [Hurst would] have . . . to establish that the building wherein the work was done was subject to improvement to the extent of 25 percent of the value of the entire building." Therefore, he sustained a demurrer without leave to amend because the petition did not allege

such improvement. The appeal to the Court of Special Appeals followed. It affirmed. Judge Moore pointed out for the Court of Special Appeals, "The word 'building' in § 9-102(a) and § 9-103(c)(2) is nowhere qualified by appropriate language so as to include a part of a building, *e.g.*, a store in a shopping mall or one or more floors in an office building." 49 Md. App. at 575. The court concluded:

> "If the General Assembly intended to include a part of a building in the lien law, the words, 'building or any part thereof,' could have been employed. They were not.
>
> "Nor can we read into § 9-103(c)(2) an interpretation of the word 'building' which is at variance with its plain and common usage in § 9-102(a). Although § 9-203(c)(2) states that, 'any lien established in accordance with this subtitle applies only to the extent of the *tenant's interest*' (emphasis added), the application of that section is subject to a condition precedent (also found in § 9-102(a)), *viz.*, that a *building* be repaired, rebuilt or improved to the extent of 25 percent of *its* value." *Id.* at 576 (emphasis in original).

We then granted the writ of certiorari in order that we might address the important public question here before the Court.

This Court has stated many times the canons of statutory construction applicable to this case. The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent, the Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if no ambiguity or obscurity appears in the language of a statute, there usually is no need to look elsewhere to ascertain the General Assembly's intent. A court may not insert or omit words to make a statute express an intention not evidenced in its original form. Absent a clear indication to the contrary and if reasonably possible, a statute is to be read so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory. See *Police Comm'r v.*

*Dowling,* 281 Md. 412, 418-19, 379 A.2d 1007 (1977), and cases there cited. See also *Balto. Bldg. & Constr. Trades v. Barnes,* 290 Md. 9, 15, 427 A.2d 979 (1981); *Dep't of St. Planning v. Hagerstown,* 288 Md. 9, 14-15, 415 A.2d 296 (1980); and *Equitable Tr. Co. v. State Comm'n,* 287 Md. 80, 86, 88, 411 A.2d 86 (1980).

Hurst, of course, mightily disputes the interpretations placed upon the statute by the Court of Special Appeals and the trial court. He argues that the mechanics' lien law "is remedial and under the decisions of this Court is to be construed in the most liberal and comprehensive manner in favor of mechanics and materialmen"; that we should strive in our interpretation of the statute "to reach a construction . . . which will carry out the purpose of the statute" since the purpose of the act, as the Court expressed in *Riley v. Abrams,* 287 Md. 348, 357, 412 A.2d 996 (1980), is "to protect those who furnish labor and materials in construction"; that the word " 'building' is capable of being construed broadly so as to refer to a distinct unit in a shopping mall, such as Appellees' restaurant and disco"; and that the General Assembly "could not possibly have meant that 'building' could refer only to an entire shopping mall in determining a mechanic's eligibility for a lien when he furnishes labor or material to a tenant for the construction of his unit in the mall" because "[t]he normal practice is that owners of shopping malls lease empty shells to tenants, who hire electricians, carpenters, plumbers, mechanics and the like to complete their offices, shops, stores, etc."

Hurst regards as significant the fact that Code (1974, 1981 Repl. Vol.) § 11-118 (a), Real Property Article, provides relative to condominiums that "[a]ny mechanics' lien or materialmen's lien arising as a result of repairs to or improvements of a unit owner shall be a lien only against the unit." This is precisely the language used when the condominium statute was revised by Ch. 641 of the Acts of 1974, the quoted language then being § 11-115 (A). Hurst apparently has overlooked the committee note to the former § 11-115, which note points out that § 11-106 (a) already provided, "Each unit in a condominium has all of the

incidents of real property." For that reason, "the Committee concluded that the substantive and procedural requirements of Title 9 of the Real Property Article are generally sufficient to cover the matter of mechanics' liens and, therefore, unnecessary and ambiguous verbiage has been eliminated from the [former] section [11-124]." Code (1974) § 11-124(a), Real Property Article, provided, among other things, "The lien of mechanics and materialmen as now provided by law shall apply to property constituted into the horizontal property regime provided that repair or improvement liens of a single condominium unit shall subject only such unit to a lien." Thus, Hurst's argument based on § 11-118 (a) is without merit.

The statute does specifically provide in § 9-112 that it "is remedial and shall be so construed to give effect to its purpose." As a general proposition, the statute's provisions are to be construed in favor of those for whom it was enacted. *Caton Ridge v. Bonnett,* 245 Md. 268, 272, 225 A.2d 853 (1967). However, this same case is authority for the fact that no lien arises for anything that does not fall within the purview of the statutory provision. We have said that the courts may not extend the scope of the mechanics' lien law, *Giles v. First National Realty,* 238 Md. 203, 205, 208 A.2d 582 (1965), beyond the obvious designs and plain requirements of the statute, *Freeform Pools v. Strawbridge,* 228 Md. 297, 301, 179 A.2d 683 (1962).

As indicated by the Court of Special Appeals, the Maryland statute contains no definition of the word "building." Our law appears to be unique since counsel, the Court of Special Appeals, and this Court have been unable to find another statute with language similar to ours relative to improvement to the extent of 25% of a building's value. Thus, it is within the context of the basic principles we have set forth that the term "building" must be construed. Black's Law Dictionary (5th ed. 1979) defines the term as:

> "Structure designed for habitation, shelter, storage, trade, manufacture, religion, business, education, and the like. A structure or edifice

inclosing a space within its walls, and usually, but not necessarily, covered with a roof. Netter v. Scholtz, 282 Ky. 493, 138 S.W.2d 951, 953." *Id.* at 176.

In *Netter v. Scholtz, Mayor,* 282 Ky. 493, 138 S.W.2d 951 (1940), an ordinance defined an established dealer "as one who occupies as owner or tenant, a regularly established building, store, or warehouse, for the purpose of wholesale merchandising . . . ." The appellants contended that they were occupants of a building since they leased stalls and occupied space at the Hay Market, which Hay Market the the court said "consist[ed] of several acres with concrete floors, driveways, and stalls or booths . . . covered by a metal roof supported by steel posts or columns and by steel girders or framework but . . . not enclosed by walls nor supplied with heating or refrigerating plants." 282 Ky. at 495. The court concluded that it was "quite manifest that the word building was used in the . . . ordinance in its most restricted sense and was not intended to include stalls and open booths." *Id.* at 496.

Consistent with the Kentucky court's discussion, 13 Am. Jur. 2d *Buildings* § 1, at 265 (1964), states, "A 'building,' in the usual and ordinary acceptation of the word, is a structure designed and suitable for habitation or sheltering human beings and animals, sheltering or storing property, or for use and occupation for trade or manufacture." The Oxford English Dictionary 1162 (Compact Edition 1971) defines "building," in relevant part, as "[t]hat which is built; a structure, edifice: now a structure of the nature of a house built where it is to stand."

Similarly, the term "building" is discussed in 12 C.J.S. *Building* at 721 (1980):

"The noun 'building' is derived from the Anglo-Saxon 'bold,' meaning a dwelling; the term is comprehensive, generic, and, in its use, may be ambiguous, having no universal inflexible meaning which will apply to all cases, but depending for its meaning upon the peculiar facts and circumstances

of each particular case, the intention of parties or the aim of a particular statute."

Citing *Zoning Appeals Board v. McKinney,* 174 Md. 551, 566-67, 199 A. 540 (1938), that work makes the further comment at 722:

> "What is a building must always be a question of degree; but ordinarily the word refers to a structure inclosing a space within walls and roof. Ordinarily, the word refers to the entire building, and if a part only is intended qualifying words are used."

*McKinney* dealt with whether a building used partly as a church and partly for residential or commercial purposes was "a building used as a church" within the context of a Baltimore City zoning ordinance that prohibited the use of any building or structure for the sale of gasoline within 300 feet of any building or structure used as a church. Judge Offutt's comments for the Court there are significant here. He stated:

> "[W]hen one speaks of a building, ordinarily he means the entire building and if he means to refer to but a part of it he indicates by some qualifying words that he refers to less than the whole. Moreover, it can not be reasonably assumed that, when the Ordinance prohibited the location of a filling station within 300 feet of a building used as a 'school' or a 'church,' it was intended to apply to a part only of a building in which a few persons were accustomed to gather for academic or religious instruction. And yet if 'building' means anything less than a whole building, there is no standard to guide the Board in determining how much or how little must be so used as to bring it within the scope of the ordinance. Since therefore the ordinance refers not to a building in which a church is located, but to a building used as a church, the conclusion seems unavoidable that it means a building wholly dedicated to purposes of religious worship." 174 Md. at 567.

Also, see generally the discussion in S. Phillips, *A Treatise on the Law of Mechanics' Liens* §§ 170-73 (2d ed. 1883), regarding what are and are not "buildings."

At oral argument Hurst placed substantial reliance upon *Noone Elect. Co. v. Frederick Mall,* 278 Md. 54, 359 A.2d 91 (1976). As Judge Moore pointed out for the Court of Special Appeals in n.4, *Noone* "did not address the question presented here." In *Noone,* two tenants of uncompleted stores in a shopping center complex employed a general contractor to complete the premises which the tenants had leased. A subcontractor of that general contractor asserted a lien against the entire center "because its work involved the completion of the building, [claiming on appeal] that the trial court erred in holding that the lien could be asserted only against the tenants' leasehold interest." 278 Md. at 55. As Judge Singley observed for the Court, the original contractor employed by the owner "was responsible only for the construction of public areas, access ways, the enclosed mall and 'shells' of preformed and reinforced concrete, each facing the mall, consisting basically of 'modules' having three walls, a floor and a roof, which could be completed as stores to meet the needs of the particular tenant." *Id.* at 55-56. The Court cited Code (1957, 1972 Repl. Vol.) Art. 63, § 9, the predecessor of the present § 9-103 (c) (2), which contained no reference to improvement to the extent of 25% of the value of a building. That statute said in pertinent part:

> "Where a building shall be erected by a lessee or tenant for . . . years of a . . . lot of ground . . . the lien shall only apply to the extent of the interest of such lessee or tenant."

The Court said:

> "Because a lien was filed only against the landlord's estate, and not against the tenants' interest, we need not reach the questions whether the work performed by the tenants' contractor and the various subcontractors was but a portion of the 'erection' of a building rather than the

'improvement' of an existing structure to the extent of 25 percent of its original value . . . ." 278 Md. at 59.

We held that "the chancellor was quite correct when he concluded that Noone's lien could not be asserted against the Owner, but only against the tenants' leasehold interests . . . ." *Id.*

No useful purpose would be served in referring to the many cases around the country dealing with the meaning of the term "building" since these cases have arisen in contexts different from that of the case at bar. Suffice it to say that in determining what constitutes a building, courts generally have adhered to fundamental principles and common sense, as was the case in *Freeform Pools,* 228 Md. 297, where this Court declined to hold that a swimming pool was a building within the purview of our mechanics' lien statute. After citing basic definitions, Judge Marbury noted for the Court that "building" cannot be said to include every type of structure on land and concluded that a swimming pool was not a "building" within "the broadest meaning ascribed to that word within a mechanics' lien statute." 228 Md. at 301. The Court deemed "significant that throughout the legislative history of the mechanics' lien law in Maryland the law has been repeatedly amended to include specific lienable structures," such as "grading, landscaping, nursery products, shrubs, and wells," which the Court said "clearly indicates that the Legislature has never intended that the law be stretched to include within its scope structures which were not clearly within the definition of the terms included." *Id.* at 302.

A situation somewhat analogous to the case at bar was considered in *Pauly Jail-Bldg. & Manuf'g Co. v. Board of Com'rs,* 68 F. 171 (8th Cir. 1895). The issue was whether a board of county commissioners was obliged to seek approval of the electorate for the manufacture and erection of cells in the cell room of a county jail by virtue of a Kansas statute requiring such approval prior to constructing "any permanent county buildings . . . ." The court said:

"It cannot be successfully maintained that either one or two cells in a jail building constitute 'a permanent county building.' No argument or illustration can make this proposition much clearer than [the] statement [of the Supreme Court of Kansas in *State v. Harrison,* 24 Kan. 271 (1880)]. A cell is but a very small room, — a room not much larger than many closets in private houses; and it can hardly be contended that the manufacture and erection of a room in a building, whether small or large, would be forbidden by an inhibition to construct a permanent building." *Id.* at 173.

A more recent determination is found in *In re Taxes, Johnson et al.,* 44 Hawaii 519, 356 P.2d 1028 (1960). The question before the court there was whether an apartment in a multiunit apartment building was within the scope of the statutory phrase "a residential building" on the issue of whether a home exemption was allowed on real property taxes. The court stated:

"We believe the ordinary and popular significance of the words 'building' and 'apartment,' and the difference in their meaning, are too well understood to require much elaboration to demonstrate that in common usage the former is not and may not be taken as a legitimate designation of the latter.

"In popular use, at least, an 'apartment house' and the 'apartments' within it, are not the same. *McMillan v. Solomon,* 42 Ala. 356, 358. A 'building' includes any structure, 'designed to stand more or less permanently, and covering a space of land for use as a dwelling, storehouse, factory, shelter for beasts or some other useful purpose.' *Commercial Casualty Ins. Co. of Newark, N.J. v. Adkisson,* 152 Okla. 216, 4 P.2d 50, 53. In normal usage the word 'building' includes the whole structure — 'the basement as well as the garret and it necessarily includes all space within the walls from the base-

ment to the garret.' *State v. Gates,* 197 Iowa 777,
197 N.W. 908; *Friedlander v. Citron,* 140 App. Div.
489, 125 N.Y. Supp. 510; 12 C.J.S., *Building,* p. 379.
An apartment in a multiple unit building is but a
subdivision thereof. To be a 'building,' the apart-
ment would have to constitute the whole structure.
As stated in *People v. Keller,* 96 Misc. 92, 161 N.Y.
Supp. 132 at page 135, respecting a room in relation
to a building, 'A room, whether it be a concert-room
or other room, is a subdivision of a building, or the
building itself where the structure contains but one
room.' " 44 Hawaii at 531-32.

Appellate courts often test arguments before them by
posing various hypothetical situations to counsel. We did so
in this case, asking the attorney for Hurst how far his con-
tention would go. We alluded to an office building in which
a tenant of a suite of offices did substantial remodeling. We
then asked whether this would give rise to a mechanics' lien.
Counsel's answer was consistent with his argument to this
Court, that if the remodeling which was done amounted to
more than 25% of the value of the leasehold interest, then a
lien would lie.

Thus, the essence of counsel's contention is based not upon
the improvement of a building to the extent of 25% of its
value, but upon a contention that improvement to the extent
of more than 25% of the value of a leasehold interest comes
within the statute. Under the statute, for there to be a valid
mechanics' lien claim, a building must be erected or it must
be "repaired, rebuilt, or improved to the extent of 25 percent
of its value . . . ." In either situation a lien may be entered
against the interest of the tenant. It will be recalled that
Hurst claimed to have "improved Respondents' Property,"
that is, their leasehold interest, in an amount "greater than
25 percent of its value." He desires that we read additional
language into the statute, so that a leasehold interest would
be a "building." The canons of statutory construction pro-
hibit this. The deficiency in Hurst's argument is seen when
we point out that improvements in the amount of X dollars

might constitute more than 25% of the value of a leasehold interest for one year, but fall far short of being 25% of the value of a leasehold interest for fifteen years. This would produce an absurd result, which is to be avoided. *See Hoffman v. Key Fed. Sav. & Loan,* 286 Md. 28, 43, 416 A.2d 1265 (1979), and *Francois v. Alberti Van & Stg. Co.,* 285 Md. 663, 670, 404 A.2d 1058 (1979).

Appellant's basic contention then is not that the basement area here improved for a restaurant and "disco" constitutes a building. Nonetheless, we believe that the common, ordinary signification of the word "building" is the structure as a whole and that under our statute, for there to be a lien for improvements, the whole shopping mall structure must have been improved to the extent of 25% of its value.

We do not mean to imply, however, that under no circumstance could there be a mechanics' lien on less than the whole of a shopping mall. If there were a clear-cut set of facts establishing that a landlord and a tenant regarded specific space in such a mall as a building, then improvement of that space to the extent of 25% of its value would be sufficient for a mechanics' lien. For instance, if a leased area were to extend from foundation to roof with the attendant walls, a mechanics' lien might lie, just as would be the case if one owner constructed a number of row or town houses and the tenant of one such dwelling improved it to the extent of 25% of its value. A lien might also lie if a condominium regime were established under which this particular basement area became a separate entity.

Accordingly, the trial court and the Court of Special Appeals were correct in their determinations. We have said, however, that amendments should be freely allowed in order to promote justice so that cases will be tried on their merits rather than upon the niceties of pleading. *See, e.g., Crowe v. Houseworth,* 272 Md. 481, 485, 325 A.2d 592 (1974); *Hall v. Barlow Corporation,* 255 Md. 28, 39-40, 255 A.2d 873 (1969); and cases cited in each. We are of the view that Hurst should be given an opportunity to plead and prove, if he can, that the leased area is a "building" within the meaning of the

statute. Thus, we shall remand the case to afford him that opportunity.

> *Judgment of the Court of Special Appeals vacated and case remanded to that Court for passage of an order vacating the judgment of the Circuit Court for Montgomery County and remanding the case to that Court for further proceedings consistent with this opinion; costs to abide the final result.*

*Murphy, C.J., dissenting:*

The Court holds today that a completed modular unit in a shopping center does not constitute a "building" within the meaning of Maryland's mechanics' lien law. The Court holds that the shopping mall itself is the "building" and in order for any lien to attach workmen must have improved the entire mall to the extent of 25% of its value. I respectfully dissent.

Maryland's mechanics' lien law was enacted to encourage construction by ensuring that artisans, materialmen, contractors, suppliers, laborers and others who enhanced the value of a project received payment for their toil. *Barry Properties v. Fick Bros.*, 277 Md. 15, 18, 353 A.2d 222 (1976). Put another way:

> "The law protected labor, in the early 19th century sense of the word: those who added tangible value to real assets. The law preferred their claims over those of general creditors. Not least of all, the lien was intended to *help* the land owner .... The law promised a safe and immovable form of collateral to those who supplied the materials and labor. The lien was a kind of boot-strap finance ..., almost a subsidy, almost a kind of government credit to

encourage building and improvement of land."
Friedman, *A History of American Law* (1973) at
214.

Indeed, passage of mechanics' lien laws has been described
as one of the major legislative contributions to 19th century
American economic growth. Hurst, *Law and the Conditions
of Freedom in the Nineteenth Century United States,* at
13-14 (1964). Furthermore, it is a well-settled principle in
Maryland that the mechanics' lien law is "remedial and
shall be so construed" in favor of lien claimants. § 9-112;
*Barry Properties v. Fick Bros., supra,* at 36; *Freeform Pools
v. Strawbridge,* 228 Md. 297, 301, 179 A.2d 683 (1962);
*Johnson v. Metcalfe,* 209 Md. 537, 121 A.2d 825 (1956); *T.
Dan Kolker, Inc. v. Shure,* 209 Md. 290, 121 A.2d 223 (1956)
(the mechanics' lien law was passed to protect materialmen,
and is to be construed in the most liberal and comprehensive
manner in their favor).

In light of this historical background, and the public policy
inherent in the mechanics' lien law, I fail to comprehend the
majority's ruling that appellant cannot obtain a lien against
appellees' leasehold interest. Six years ago, as noted by the
majority, in *Noone Elect. Co. v. Frederick Mall,* 278 Md. 54,
59, 359 A.2d 91 (1976), we rejected a subcontractor's attempt
to enforce a lien against the owner of a shopping center.
There, the owner of the Frederick Mall employed a builder
to construct "public areas, access ways, the enclosed mall
and 'shells' of preformed and reinforced concrete, each facing
the mall, consisting basically of 'modules' having three
walls, a floor and a roof, which could be completed as stores
to meet the needs of the particular tenant." *Id.* at 55-56. Two
tenants of these unfinished modules engaged a general
contractor to complete their leased premises. The general
contractor subcontracted the electrical work to Noone Elect.
Co. When Noone was not paid by the general contractor it
filed and sought to enforce a mechanics' lien against the
entire mall. The owner of the mall asked for summary judg-
ment, arguing that since the work done and materials
furnished were supplied pursuant to contracts with

individual tenants, the lien could not attach to the entire complex. The trial judge granted the owner's summary judgment motion. On appeal, we affirmed, holding that "Noone's lien could not be asserted against the Owner, but only against the tenants' leasehold interests," *Id.* at 59. The Court's decision was based in part on then existing Art. 63, § 9, which stated:

> " 'Where a building shall be erected by a lessee or tenant for life or years . . . the lien shall only apply to the extent of the interest of such lessee or tenant.' " *Id.* at 57.[1]

Applying this statutory provision, the Court found that "the lien attaches only to whatever interest or estate is held by the person liable for the cost of construction or improvement." *Id.* at 58. Since the owner was not responsible for the work performed on the individual modules, Noone's lien could not attach to the owner's estate. An integral part of the *Noone* ruling was the implicit recognition that an uncompleted store in a shopping center was a "building" for the purposes of the mechanics' lien law. The majority dismisses the *Noone* decision because "it did not address the question presented here." Plainly, *Noone* did not address "the question" because there was no question that the lienor's recourse, if not against the owner, had to be against the tenant. Surely, the *Noone* Court would not have held that the lienor should seek relief from the tenant if that is not what it meant.

In *Freeform Pools v. Strawbridge,* 228 Md. 297, 179 A.2d 683 (1962), the Court held that a swimming pool could not be considered a "building" within the contemplation of the mechanics' lien law. We there noted:

> "There is no definition in the mechanics' lien law of

---

1. Insofar as pertinent, the recodification of this provision has retained the same meaning. Maryland Code (1974, 1981 Repl. Vol.) § 9-103 (c) (2), Real Property Article. ("If a building is erected, or repaired, rebuilt or improved . . . by a tenant for life or years or by a person employed by the tenant, any lien . . . applies only to the extent of the tenant's interest.")

the word 'building.' Taken in its broadest sense it can mean only an erection intended for use and occupancy as a habitation, or for some purpose of trade, manufacture, ornament, or use, such as a house, store, or a church."
228 Md. at 301.

I think the module in this case, considered in a broad sense as our cases require, is indeed a "building" subject to the provisions of the mechanics' lien laws. Black's Law Dictionary (4th ed. 1951), quoted in *Freeform Pools,* variously defines a "building" as " '[A] fabric, structure, or edifice, designed for the habitation of men or animals or for the shelter of property.' " American Heritage Dictionary of the English Language defines a "building" as "Something that is built; a structure; an edifice." Webster's Third New International Dictionary (1963) defines a "building" as :

"a thing built; a: a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure — distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy."

The majority's constrictive definition of a "building" in this case ignores the teaching of *Noone Elect. Co. v. Frederick Mall, supra;* indeed, it casts adrift all potential lien claimants of modules in shopping malls and other multi-unit structures constructed to the specifications of tenant-lessees. Because I believe that today's decision seriously

impairs the broad remedial intent of the mechanics' lien law, I would reverse the judgment of the lower court.[2]

Judge Cole has authorized me to state that he concurs in the views expressed herein.

---

**2.** In the penultimate paragraph of the majority opinion, the Court suggests that the word "building" in the mechanics' lien statute may be broad enough to encompass "specific space" in a shopping mall leased by a tenant who proceeds with construction "from foundation to roof with attendant walls. . . ." While I applaud the majority's effort to import more flexibility into the word "building," vis-a-vis modular units within shopping malls, it is of no aid to the appellant in this case.