PEOPLE v. ROYAL.

(Supreme Court, Appellate Division, Second Department. December 31, 1897.)

LICENSES—EXHIBITION—EVIDENCE.

 A city ordinance required certain classes of persons to be licensed, including common carriers, peddlers, keepers of billiard saloons, bowling alleys, shooting galleries, "exhibitions," menageries, circuses, common shows, managers of theaters, etc. Defendant was the author of a book purporting to expose gambling and confidence games, and rented premises where, with a view of attracting purchasers for the book there on sale, free public exhibitions of games and gambling tricks were given without a license. He was convicted of violating the ordinance, in that his acts constituted an "exhibition," within its meaning. *Held*, that the term had relation only to entertainments where the exhibition is the principal thing, and from which the exhibitor derives or expects to derive profit, and that the conviction was, therefore, improper.

Appeal from Kings county court.

Henry Royal was convicted of violating a city ordinance, and appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BRADLEY, BARTLETT, and HATCH, JJ.

Robert H. Elder, for appellant.
Herman H. Baker, Asst. Dist. Atty., for the People.

PER CURIAM.　The ordinance which becomes the subject of construction in this case reads as follows:

"Section 1. The following named persons and classes of persons are hereby required to be licensed. Licenses shall be granted to them by the mayor as hereinbefore provided, to carry on their respective trades or occupations, to wit: common carriers, carriers of passengers, criers, hawkers, peddlers, pawnbrokers, junk dealers, public cartmen, truckmen, hackmen, cabmen, omnibus drivers, expressmen, auctioneers, keepers of intelligence offices, keepers of billiard saloons, bowling alleys, shooting galleries, exhibitions, menageries, circuses, common shows, slaughter house, managers of theaters, opera halls, play houses and all other places of public amusement, dealers and speculators in tickets to theaters and other places of public amusement."

The defendant is the author of a book, which he has procured to be copyrighted. The title-page of the book shows its character. It reads:

"Gambling and Confidence Games Exposed, Showing How the Proprietor of Gambling Houses and the Players can be Cheated, Giving the Introduction and Story of All Confidence Games, Exposing All Crooked Tools, and Giving the Exact Per Cent. of All Square Games. Published by H. W. Royal, Chicago, Ill.

Then follows a sketch of the life of the author, and an expose of what the author denominates "crooked gambling," in which he refers to and explains a number of games, and how people are cheated in connection therewith. In May of this year the defendant rented the premises 363 Fulton street, consisting of two rooms, and established himself therein, with an assistant, for the purpose of selling this book. The assistant occcupied the first room, and his part of the business seems to have been to operate a dice box and dice, cards, and shells with a pea, in connection with which he delivered a lecture, and requested the people assembled to go inside and buy one of the books. In the other room the defendant was also exhibiting how gamblers do tricks with dice, with three cards, and with three small shells and a pea. He also changed bills, and gave representations of a "flim-flam" game. These various games, and the methods of their operation for purposes of cheating, were explained by the defendant. The illustration with the articles themselves, and the explanation, would end with an invitation to buy the book, which contained the whole matter, and much else. No admission fee was charged, the place was open to the general public, and no money was paid for anything except the book. The defendant, while conducting this place in this manner, was arrested, charged, and has been convicted, of a violation of the ordinance, in that what he did constituted an "exhibition," within the meaning of that term.

We think the conviction was improper, and that what the defendant did does not constitute an "exhibition," within the meaning of the ordinance. It is not denied but that the word "exhibition," in its broad significance, would embrace what the defendant did in this case. But it is quite evident that the word, as used in the ordinance in question, is so used in a sense much more restricted. Given its broadest signification, there are a large class of business men that

use various methods to attract custom and sell their goods that would be brought within its terms. Every contrivance for automatic movement of dumb figures used in display windows to attract attention, every exhibit of paintings for sale, or to arouse attention and attract visitors to public marts of trade, every person exhibiting exercising apparatus through the medium of an automaton or human being, every person displaying advertising matter, pictures, and designs by means of a stereoptican, are a few of the very many things which would be brought within this ordinance, if the word were to be construed in its general sense. The connection in which it appears in the ordinance shows that its meaning has relation to entertainments where the exhibition itself is the principal thing, and from which the exhibitor derives or expects to derive profit. If a store should be opened for the sale of the works of any standard author, it would, we think, be thought quite within the line of a pure trading scheme to exhibit anything characteristic of the book or its author which would promote its sale. If this was a business scheme to sell this book, and we find nothing in the testimony which leads us to believe it was not, it was quite permissible for the defendant to exhibit his tricks to make illustration, and descant upon the merits of his book, and thereby effect profitable sales, if he could. It is what all trades do, and are doing, every day, and no one has thought that thereby they violated the law.

This case is rendered somewhat different from those with which we usually come in contact, for the reason that it deals with things which are under the ban of the law, as they are usually found in connection with criminal acts. But there is no more reason why iniquitous schemes may not be exposed than there is why good ones may not be exploited. The defendant's book is not under the ban of the law. He has as much right to sell it, and make profit thereon, as has any other person to sell his or another's, whenever the book is within the pale of the law; and it is quite as legitimate for him to open a place for that purpose as for any other person; and, so long as he conducts such a business, using his exhibitions, illustrations, and explanations to accomplish that end, we think he offends no law, and does not violate this ordinance. No accurately defined rule can be laid down which separates what is embraced within the term "exhibition" as used in the ordinance, and what is outside of it. Each case must be considered as it arises. In the present case the acts complained of are not so embraced.

The judgments of the county court and of the police justice should, therefore, be reversed, and the defendant discharged.