THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* LANE-MARVEY CORPORATION, Defendant.

City Magistrate's Court of the City of New York, Borough of Manhattan, Municipal Term Court, July 1, 1952.

*Denis M. Hurley, Corporation Counsel* (*Bernice P. Rogers* of counsel), for plaintiff.

*Morris Siegel* for defendant.

OHRINGER, M. The ordinance which becomes the subject of construction in this case is section B32–41.0 of the Administrative Code of the City of New York, and the defendant is charged with its violation in that it is claimed it did unlawfully maintain and operate a " common show " without having a license therefor.

Unless restrained by law, the defendant has a perfect right to carry on its business in any way it pleases not amounting to a nuisance. In the exercise of its administrative powers the City of New York has a right to require that certain businesses, particularly those catering to the public, be licensed before they can operate. In the Administrative Code those businesses have been set forth and among them is included the business of conducting a " common show." (Administrative Code, § B32–40.0 *et seq.*)

In this case all of the facts have been conceded and the only dispute is whether the apparatus in question comes within the definition of the words " common show " as defined in the Administrative Code. This apparatus consists of a mechanical pony, electrically operated by the insertion of a ten-cent piece in a slot box attached to the mechanism, which in operation produces a vibrating up-and-down motion for about two minutes, in simulation or sensation of riding a real pony. This mechanical pony is located in the defendant's store, near the front, to which the public is invited and the patrons are amused by its use.

Section B32–40.0 of the Administrative Code provides: " Definitions.—a. Whenever used in this article the term ' common show ' shall include: (1) A carousel, ferris wheel, gravity steeplechase, chute, scenic cave, bicycle carousel, scenic railway, striking machine, switchback, merry-go-round, puppet show, amusement-arcade and all other shows of like character ".

The words of a statute are not construed singly but each is construed in connection with the other words of the context and even with other statutes *in pari materia*; as well as with

the circumstances surrounding the enactment of the statute. (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 234.)

When the administrative body of the City of New York stated that the term " common show shall include " and then set forth the specific types of amusement requiring a license followed by the general clause " and all other shows of like character," were they attempting to define or limit the words " common show "?

It is a universal principle in the interpretation of statutes that *expressio unius est exclusio alterius.* That is to say, the specific mention of one person or thing implies the exclusion of other persons or things. The maxim *expressio unius est exclusio alterius* is not, however, an ironbound rule of law excluding in all cases from the operation of a statute those things which are not enumerated therein. It is merely an aid to be utilized in ascertaining the meaning of a statute when its language is ambiguous, and should be applied to accomplish the legislative intent, not to defeat it. If the language of a statute indicated that other things than those mentioned are intended to be included within its operation the maxim will not necessarily require their exclusion, but in such case the intention to the contrary must be discernible from the context of the act itself. (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 240.)

The disputed section of the Administrative Code did not mean to define or limit the words " common show," but to state what they should be deemed to include, leaving many other performances and shows than those specified in the provisions of the act. Reference to other sections of the Administrative Code confirms this thought: Whenever it was intended to limit the definition or meaning of any word, the legislative body expressed its intent by using the words, " the following terms shall mean ". (See Administrative Code, §§ B32–9.0, B32–33.0, B32–53.0.)

The words " common show shall be deemed to include " are to be interpreted in their familiar and popular sense and without any forced, subtle or technical construction to limit or prevent their meaning. All canons of interpretation are subordinate to the intent and are intended as a means to ascertain and not as a means to destroy the legislative intent. (*Weistblatt* v. *Bingham,* 58 Misc. 328.) The word " include " means to comprise as a component part, to enclose within, contain, embrace. " Common " means general, universal, public, and " show "

means entertainment. Combined, the two words, "common show," giving them their popular meaning, mean public entertainment. Of necessity, the specific types of entertainment enumerated as being within the words "common show" did not limit the general meaning of these two words.

As the mechanical pony involved has a relation to entertainment from which a profit is to be derived, a license to exhibit becomes necessary. (*People ex rel. O'Neil* v. *Michaud*, N. Y. L. J., Nov. 5, 1913, p. 597, col. 3; *People* v. *Royal*, 23 App. Div. 258.)

There is also contained in the section under review, immediately following the specific words, a general clause reading "and all other shows of like character". Book 1 on Statutes of McKinney's Consolidated Laws of New York provides in section 239 under construction and interpretation the following: "§ 239. *Noscitur a sociis and ejusdem generis*—The maxim *noscitur a sociis*, meaning literally, ' it is known from its associates,' and the expression *ejusdem generis*, meaning ' of the same kind,' are frequently used in the interpretation of statutes. By following these expressions the scope of a word is frequently measured by the surrounding terms. *Where words of specific or inevitable purport are followed by words of general import the application of the last phrase is generally confined to the subject matter disclosed in the phrases with which it is connected; for it is known by the company it keeps;* and though it might be capable of a wider significance if found alone, it is limited in its effect by the words to which it is an adjunct. *It may strengthen the general structure, but it cannot exceed the original outline.*" (Italics by the court.)

" Carousel " is synonymous with the word " merry-go-round," which means a revolving machine, as a circular platform fitted with hobby horses, etc., on which persons, especially children, ride for amusement. The mechanical pony involved is similar to a hobby horse, which may be characterized as a toy horse mounted on rockers. Both the carousel and hobby horse (mechanical pony in this case) simulate the sensation of movement of a real horse and appear to be of the same kind. They bear a resemblance to each other and are of like character. This view by the court will not cause objectionable results, inconvenience, hardship or injustice. The intent of the legislative body will be carried out and a just result obtained.

If there was any doubt as to any portion of the section of the Administrative Code involved, such doubt would have to be resolved in favor of the People since the People have no right

of appeal. This principle of law has been long and well established. In the case of *People* v. *Reed* (276 N. Y. 5, 9) the court said: " The People should be entitled to any reasonable doubt a trial judge may have upon the law for, if he makes a mistake on the law, the People have no opportunity or method of reviewing his ruling, as strange as it may seem to us in this enlightened day. The defendant, for a wrong ruling, may always appeal the case for review to a higher court; the People have no such privilege, except as hereinafter stated. The trial justices in criminal cases, therefore, should bear this in mind when ruling upon points of law."

The defendant is found guilty of violating section B32–41.0 of the Administrative Code of the City of New York.