KILLIAN v. GOODMAN.

1. COVENANTS — BUILDING RESTRICTIONS — "A DWELLING HOUSE" MEANS ONE SINGLE DWELLING.

The words "a dwelling house" and "a residence," as variously used in the deeds to describe the restrictions on the lots in a certain plat, construed, and *held*, to mean one single dwelling or one single residence, and therefore restricted the use of the premises to single residences or dwellings.[1]

2. SAME — MISINTERPRETATION OF RESTRICTIONS DOES NOT WAIVE ALL RESTRICTIONS.

That the lot owners in a certain plat and their grantor misinterpreted the meaning of the restrictions, and allowed two-family and four-family flats to be built on said plat, when only single residences should have been built, *held*, not to amount to a waiver of the restrictions thereon, and therefore they are entitled to restrain the erection of a 33-family apartment, which would seriously change the character of the neighborhood for residence purposes.[2]

Appeal from Wayne; Mandell (Henry A.), J.    Submitted October 17, 1924.    (Docket No. 110.)    Decided December 31, 1924.    Rehearing denied April 3, 1925.

Bill by Herman Killian and others against Harry Goodman and others to enjoin the violation of building restrictions.    From a decree dismissing the bill, plaintiffs appeal.    Reversed, and decree entered for plaintiffs.

*Lynch & Lovett*, for plaintiffs.

*Benjamin, Betzoldt & Bassett*, for defendants.

McDONALD, J.    This bill was filed to enjoin the

---

[1] Deeds, 18 C. J. § 452 (1926 Anno); [2] Id., 18 C. J. § 468.

Authorities discussing the question as to whether multiple residence is violation of restrictive covenants are collated in notes in 45 L. R. A. (N. S.) 726; L. R. A. 1918C, 873.

On multiple residence structures as violation of restrictive covenants, see note in 18 A. L. R. 451.

erection of a 33-family apartment house which the plaintiffs claim is in violation of certain building restrictions. The district in question is known as Mills subdivision No. 4, in the city of Detroit. It was platted in 1912. The plat contains no building restrictions. All of the plaintiffs own property on Helen avenue in this subdivision. The defendant Goodman bought lot 41 and a part of lot 42, located at the southeast corner of Helen and Stuart avenues, with the intention of building a 33-family apartment house. He says that there are no building restrictions covering the lots in Mills subdivision No. 4, which would prevent the erection of such a building, and that if there were any valid restrictions they have been waived by the building of two-family, four-family and six-family flats. On the hearing the circuit judge accepted his view of the case and dismissed the bill. From the decree entered the plaintiffs have appealed.

The first question to which our attention is directed is whether there is any valid restriction applying to Mills subdivision No. 4, which would prevent the erection thereon of a 33-family apartment house. The record shows that in this subdivision there have been 143 conveyances from the owner, Merrill B. Mills, to different grantees. Fifty-two of these restricted the use of the premises to "dwelling house." In 87 of them the words "a dwelling house" were stricken out of the printed form and the words "a residence" were inserted instead. Where the words "a dwelling house" were used it read:

"That no store, factory or building of any nature other than a dwelling house shall be erected on said premises," etc.

Where the words "a residence" were used it read:

"That no store, factory or building of any nature other than a residence shall be erected on said premises," etc.

Counsel for the defendants contend that the term "a residence" does not mean a single residence, but merely fixes the nature of the use of the property for residence purposes as distinguished from business or manufacturing purposes, and that it means a single home, a two-family, four-family or a 33-family apartment. We think counsel are wrong. In *Schadt* v. *Brill*, 173 Mich. 647 (45 L. R. A. [N. S.] 726), this court held that the words "a dwelling house" used in a restrictive covenant mean a single dwelling house. If a dwelling house means a single dwelling house why does not a residence mean a single residence? The letter "A" has some significance before the word "residence." A horse means one horse, a single horse; it does not mean a team or 33 horses. So a residence means one residence, a single residence, not 33 residences. Giving to the words used in these restrictions their ordinary commonly understood meaning, "a dwelling house" means one single dwelling house and "a residence" means one single residence. The terms as used in the restrictions are synonymous. This being true we have then 143 conveyances of lots in this subdivision, 139 of which contain covenants restricting the use of the premises to single residences or dwellings. Four contain no restrictions. The defendants' conveyance restricts the use of his lots to "a residence" and therefore prohibits the erection of a 33-family apartment house. Why is he not bound by it?

In his opinion which forms the basis of the decree in this case the circuit judge said:

"I am inclined to rule that the general departure from the original plans, if there were any plans or claimed plan, by allowing two-family apartments and four-family apartments and in some cases six, destroys everything in this subdivision except the restriction that the whole subdivision should be restricted to residence purposes only."

We do not think the evidence shows a waiver or an abandonment of the restrictions.   The plat was without building restrictions.   Mr. Gilmore, representing Merrill B. Mills, platted the property and he testifies that the reason he did not put in any restrictions was because of a previous agreement between Mr. Mills and certain property owners relative to the use of the lots on Helen avenue.   This agreement was in writing and is noted on the abstracts, but was not put in evidence.   So while the record does not show the extent of the agreement it does appear that it related to restrictions on this property.   From this it is a fair assumption that it contained the same restrictions as were incorporated in the form of conveyances used when the property was subsequently put upon the market.   As we have pointed out, the effect of these restrictions was to limit the use of the lots in the subdivision to single dwellings or single residences. But they were not so understood by the parties, which is not at all surprising in view of the fact that able counsel are here contending for different constructions.   For the most part two-family flats were erected.   The plaintiff Killian testifies on cross-examination as to his construction of the restriction:

"*Q.* You are contending here that under the restrictions in your deed only single residences, single family or single dwellings can be erected on these lots; is that right?

"*A.* No, I think two-family flats could be erected; that is what it says, two story.

"*Q.* Does it say two-family flats in your restrictions?

"*A.* That is what I understand, two-family flats."

Mr. Fred Lehman, an attorney, testifies:

"*Q.* When you purchased your property, were you given to understand that it was going to be largely a two-family proposition?

"*A.* That was my understanding; that was both of our understandings.   My brother and I bought our lots at the same time, and we both understood

that this was a two family, these were two-family sites.   *   *   *   I know from my talk with my neighbors at different times that that is what they understood."

Mr. Wagnitz also testified that when he bought his lot he was told that it was restricted to single dwellings and two-family flats.   He also says:

"At the time I got my deed I looked over this property.   On lot 39, two lots to the south of me, there was a four-family flat there.   It didn't look like a four-family.   I called the agent's attention to it and he said 'I don't think it will happen again, they slipped in without our knowing it.' "

Mr. Spietz testifies to a conversation with one Tom Gaghan, who was Mr. Mills' secretary:

"*A.* I says, 'Tom, now here, they might put some stores on this corner' and he says, 'no, it is restricted. We will allow nice two-family flats.   *   *   *   We would not object to nice two-family flats,' and, he says, 'the reason we do this we do not expect to sell all these lots in one year and as we have nice dwellings put up we will get more money for the balance of the land.' "

It is not necessary to quote further as to the construction placed upon the restrictions by all of the parties.   Other witnesses testify substantially to the same effect.   It was generally understood that the building of two-family flats was not a violation of the restrictions.   The binding effect of such a practical construction is recognized by this court in *James* v. *Irvine,* 141 Mich. 376.

In this view of the evidence there has been no departure as to the two-family buildings from the restrictive covenants in the several conveyances as construed by the owner and his grantees.   It matters not that the construction was erroneous.   As was said by Mr. Justice WIEST, in *Oliver* v. *Williams,* 221 Mich. 471:

"An honest interpretation, though a mistaken one, accepted and acted upon constitutes no waiver."

See, also, *Kelman* v. *Singer*, 222 Mich. 454.

Neither does the fact that a few four-family flats and a six-family terrace were erected bar the plaintiffs' right to insist on the observance of the restriction. Witnesses testified that the four-family flats "do not in any way violate the uniformity of the surrounding buildings." They have one front entrance, are of similar height and set back 30 feet from the front line of the street the same as the other buildings. The six-family flat is built on the corner of Helen and Canfield avenues. It consists of two buildings with a small space between them. The two-family part faces on Helen and the four-family on Canfield. This building is more objectionable than the four-family flats but neither seriously change the character of the neighborhood for residence purposes. On this question the case of *Rosenzweig* v. *Rose*, 201 Mich. 681, is decisive. In that case the restrictive covenant limited the use of the premises to a dwelling house, a single dwelling house. In that case, as in this, the defendant sought to erect a large apartment house, basing his right to do so on the fact that there had been many violations of the restrictions in the building of double houses, four-family flats and eight-family apartments. The evidence showed numerous and flagrant violations of the restrictions. Yet the court said:

"While it is true that there have been departures made from the original restriction of a one-family residence, nevertheless, there has been no such substantial change in the structure of the buildings as is contemplated by the defendant in the erection of a 24-family apartment building on a single lot. We take it it needs no argument to demonstrate that the erection of such a building would destroy the privacy of the neighborhood and make it much less desirable as a residential district, and if such a flagrant violation

of the building restrictions imposed on this lot were permitted, the practical result would be the cancellation of all the restrictions imposed upon the entire subdivision."

The language above quoted is applicable here.

As there was a general plan for the development of the property which was followed by the plaintiffs, they have a right to enforce the restrictions against another grantee of their common grantor. The defendant bought the lots on which he intends to erect a 33-family apartment house with full knowledge of all the facts. He is bound by the restriction in his conveyance as construed by the parties.

The decree of the circuit court dismissing the bill is reversed. The plaintiffs will have the relief prayed for, and costs of suit to be taxed.

BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred. CLARK, C. J., did not sit.