IN RE TAXES, HARRIET JOHNSON, RUTH BRO-
MANN, FLORENCE S. KURODA, HARRIET R.
RAY, WILLIAM S. AND SHEILA J. ODOM, PETER
AND MAXINE PETRIS, SARAH MACFARLANE,
GENEVIEVE P A I K U L I GRAY, GLADYS U.
MATTSON, JEAN KEITHLY, LUCILLE J. DE
MARS, MARY M. COATES, ROY L. AND JACQUE-
LINE BENHAM, HELEN HOPE BROWN, MARY
LOUISE JARDINE, ZELMA N. MEYERS, HELEN
S. JUDY, ANDREW J. AND M A R Y A N N B.
WALTON, M. D. MASON, AGNES B. VANCE,
BERNADETTE V. MANNING, STELLA M. JONES,
AND HENRY J. AND MARGARET D. SCHURMAN.

No. 4109.

September 12, 1960.

Tsukiyama, C. J., Marumoto, Cassidy, Wirtz, JJ.,
and Circuit Judge Jamieson in Place of
Lewis, J., Disqualified.

The question for determination on this appeal by the deputy tax commissioner from a decision of the tax appeal court is whether an apartment in a cooperative apartment building can qualify for the statutory home exemption allowed on real property taxes. The facts of the case were stipulated on the hearing before the tax court and are related hereunder.

The land involved, situated in Honolulu, is owned in fee by Violet Maertens. It is held under long-term lease by a corporation, The Oahuan, Ltd. The corporation was organized for development and operation of the premises on a cooperative basis. It constructed four buildings on the premises. The buildings contain 46 apartments and are known as The Oahuan Apartment Hotel. Under the cooperative plan adopted, the corporation issued and sold 45 shares of stock. Each purchaser of a share of stock acquired a sublease of a particular apartment for a term ending January 31, 2011. In addition to the exclusive use of the apartment, each sublease granted the sublessee an undivided 1/45 interest in the entire premises of the hotel subject to the exclusive rights of the other sublessees to occupancy of their respective apartments. Each sublease contained a covenant that the sublessee would pay all taxes assessed against the demised premises and a covenant that the apartment would be used for residential purposes only.

The appellees are the individual sublessees of 23 of the apartments, which they use as their respective residences. Their subleases are recorded. The sublessees of 22 of the remaining 23 apartments rent their apartments to others. These apartments are also used for residential purposes only. The 46th apartment has been retained by the corporation for the use and occupancy of the resident manager of The Oahuan Apartment Hotel. No other part of the hotel premises is used for any purpose but the accommodation of the occupants of the apartments.

Real property taxes on the land and improvements of the hotel premises for 1957, the year involved, were assessed to Violet Maertens, as owner. Each of the appellees made timely application (under R.L.H. 1945, Section 5149.01, as enacted by Act 64, S.L. 1955) for a lessee's home exemption in respect to the property, with his interest described in the claim filed for the exemption as a "1/45th interest in buildings." The tax assessor denied the applications. Appellees appealed to the board of review of the First Taxation Division, which granted the exemptions. The deputy tax commissioner then appealed to the tax appeal court, which affirmed the action of the board of review. As stated above, the case is before us on the deputy tax commissioner's appeal from the tax court's ruling allowing the exemptions.

The determination of the issue presented involves the construction and application of R.L.H. 1945, Section 5149, as amended by Act 64, Sp. S.L. 1949; Act 133, S.L. 1951; and Acts 134 and 145, S.L. 1953.[1] As so amended, the section provides:

Section 5149. Homes.

(A) *Real property owned and occupied only as his or their home by any individual or individuals, shall be exempt* only to the following extent from property taxes: 1. Totally exempt upon that portion of the value thereof not in excess of fifteen hundred dollars; 2. Exempt as to one-half of that portion of the value thereof in excess of fifteen hundred dollars but not exceeding five thousand dollars; *provided,* however:

(1) That no such exemption shall be allowed to any corporation, copartnership or company;

[1]This case was initiated before the promulgation of R.L.H. 1955. References in the opinion of the tax court and in the briefs on this appeal are to sections of R.L.H. 1945. In this opinion the same practice will be followed. All references to statutory provisions will be to the 1945 revision as amended before 1957 unless otherwise stated or apparent from the context. Section 5149, R.L.H. 1945, as amended, appears as Sections 128-13 and 128-14, R.L.H. 1955.

(2)  That such exemption shall not be allowed on more than one home for any one taxpayer;

(3)  That where the taxpayer has acquired his home by a deed made on or after July 1, 1951, said deed shall have been recorded prior to January 15 of the year for which the exemption is claimed;

(4)  That a husband and wife shall not be permitted exemption of separate homes owned by each of them, unless they are living separate and apart, in which case they shall be entitled to one exemption, to be apportioned between each of their respective homes in proportion to the value thereof;

(5)  That a person living on premises, a portion of which is used for commercial purposes, shall not be entitled to an exemption with respect to such portion, but shall be entitled to an exemption with respect to the portion thereof used exclusively as a home; *provided,* however, that this exemption shall not apply to any building or structure, including the land thereunder, a portion of which is used for commercial purposes; *provided,* further, that where a portion of any building or structure is used for the purpose of drying coffee, such use shall not bar the granting of such exemption; *provided,* further, that where a portion of any real property, including structures, is used in connection with the planting and growing for commercial purposes, or the packing and processing for such purposes, of flowers, plants or foliage, such use shall not bar the granting of such exemption;

(6)  *That where two or more individuals in common own or lease land on which their homes are located, each home, if otherwise qualified for the exemption granted by this section, shall receive the exemption.* If a portion of land held in common

by two or more individuals is not qualified to receive an exemption, such disqualification shall not affect the eligibility for an exemption or exemptions of the remaining portion.

(B) *For the purpose of this section, the word "home" shall include* (a) the entire homestead when the same is occupied by the taxpayer as such, and shall also include (b) *a residential building on land held by the lessee or his successor in interest under a lease for a term of five years or more for residential purposes and owned and used as a residence by such lessee or his successor in interest,* as the case may be, where the lease and any extension, renewal, assignment, or agreement to assign said lease, have been duly entered into and recorded prior to January 15 of the year for which the exemption is claimed, and whereby the lessee agrees to pay all taxes during the term of the lease, and shall also include (c) premises held under an agreement to purchase the same for a home, where the agreement has been duly entered into and recorded prior to January 15 of the year for which the exemption is claimed, whereby the purchaser agrees to pay all taxes while purchasing the premises. The subletting by the taxpayer of not more than one room to a tenant shall not affect the exemption provided for by this section. The use of a portion of any building or structure for the purpose of drying coffee and the use of a portion of real property, including structures, in connection with the planting and growing for commercial purposes, or the packing and processing for such purposes, of flowers, plants or foliage, shall not affect the exemptions provided for by this section.

(C) As used in this section, in the first paragraph of section 5141, and in section 5147, the word "lease" shall be deemed to include a sublease, and the word

524

"lessee" shall be deemed to include a sublessee.[2]

(Emphasis added.)

Also applicable is R.L.H. 1945, Section 5141, as amended by Act 64, Sp. S.L. 1949; Act 151, S.L. 1951; and Act 64, S.L. 1955. As amended, the section reads:

Section 5141. Assessment of property; to whom in general. The real property shall be assessed in its entirety to the owner or owners thereof; provided, that where land has been leased for a term of five years or more for residential purposes, the lessee or his successor in interest, holding the land for such term under such lease and using the same for residential purposes, may be considered an owner with respect to the residential buildings owned by him on such land, provided notice and claim for exemption is given pursuant to sections 5147 and 5149.01. For the purposes of this chapter, residential buildings may be deemed to be owned by a lessee or his successor in interest notwithstanding any reversionary interest therein of the lessor.

For the purposes of this chapter, life tenants, executors, administrators, trustees, guardians or other fiduciaries may be, and persons holding government property under an agreement for the conveyance of the same to such persons shall be, considered as owners as to any real property held or controlled by them as such. Lessees and other tenants holding under any government lease or other tenancy shall be considered as owners during the time any real property is held or controlled by them as such, as more fully provided in section 5154.[3]

---

[2]For convenience of reference we have designated the main paragraphs of Section 5149 by capital letters. They will be referred to throughout this opinion as "subsections"; the numbered subdivisions of the proviso to subsection (A) will be referred to as "paragraphs"; and the provisions of subsection (B), designated by small letters, as "clauses."

[3]Section 5141, as amended, appears as Section 128-4, R.L.H. 1955.

In allowing the claims for exemption, the tax court stated, "that Appellees qualify as owners of the buildings in which they live under the provisions of Sections 5141 and 5149, R.L.H. 1945, since they are sublessees holding land for residential purposes pursuant to a lease for a term of more than five years." The court noted that paragraph (6), subsection (A), Section 5149, provides that where two or more individuals in common own or lease land on which their homes are located, each home, if otherwise qualified for the exemption, shall receive the exemption, but rejected the tax commissioner's contention that the word "home" as used in the provision is limited by subsection (B) to exclude multiple unit buildings. It held that the word "home" in its ordinary sense can include an apartment, citing *In Re Henderson,* 21 Haw. 104 and *Wilson* v. *Kunewa,* 29 Haw. 555. *Lockhart* v. *Sasser,* 156 Fla. 339, 22 So. 2d 763, and *Person* v. *Levenson,* 143 S.W. 2d 419, Tex., were also cited as representative cases from other jurisdictions "holding that an apartment house can be a home or homestead." In conclusion the tax court held: "In the present case, the statute does not appear to us to be ambiguous. It gives an exemption to all 'homes' which qualify unless otherwise expressly excluded. In the circumstances of this case, a construction which would exclude from the scope of the word 'home' an apartment appears to us to be manifestly incorrect."

We will first summarize the provisions of the law having direct bearing on the issue to be decided.

By subsection (A) of Section 5149, a home exemption is allowed on "Real property owned and occupied only as his or their home by any individual or individuals." The exemption is made available to a lessee by clause (b) of subsection (B) in respect to "a residential building on land held by the lessee * * * for residential purposes and owned and used as a residence by such lessee," if the lease

is recorded, is for a term of more than five years, and imposes the obligation on the lessee to pay all taxes. Subsection (C) places a sublessee in the same category as a lessee in respect to home exemptions. Section 5141 declares that such a lessee may be deemed the owner "with respect to the residential buildings owned by him" on the demised land, notwithstanding any reversionary interest in the lessor. By paragraph (6) of subsection (A) it is provided that where two or more individuals own or lease land in common on which their homes are located "each home, if otherwise qualified for the exemption granted by this section, shall receive the exemption."

Appellees argue that their apartments are their homes and meet all requirements of the statute for an exemption, even though each of their homes is only a portion of a building. Their argument is summarized in the brief submitted on their behalf as follows: "Each Taxpayer has a 1/45th undivided interest in the 'Oahuan' premises as a whole, together with the exclusive right of occupancy of a particular apartment in one of the buildings on the premises. The buildings are factually, (Tr. p. 20), and legally residential buildings on land held by each of the Appellees under a lease for a term of five years or more for residential purposes and owned or used by each Appellee as a residence. Each lease is recorded. Each Appellee is therefore entitled to a home exemption under Sec. 5149 R.L.H. 1945, as amended. The argument that a 'home' within the meaning of the statute cannot be a portion of a building is not supported by the words of the statute creating the exemption. The statutory requirement that the Appellees lease the premises 'in common' is fully met by the provisions of the Appellees' subleases." Appellees urge that their homes fall within the first class of homes covered by clause (a) of subsection (B) but state it is not actually necessary for them to rely on that

classification since their "claims of exemption fall within the scope of the second class [clause (b) of subsection (B)], each home being located in 'a residential building on land held by the lessee or his successor in interest under a lease for a term of five years or more for residential purposes and owned and used by such lessee' * * *." Appellees do not contend they are entitled to a single exemption for each of the four apartment buildings to be prorated on the basis of the number of apartments in the building but claim that each of their apartments rates a full exemption.

No question has been raised by appellant respecting the sufficiency of appellees' applications for exemption and he does not take issue on any of the incidental qualifying requirements enumerated by appellees. He also makes the concession that each of the apartment buildings may be considered a residential building—a concession which we accept with reservations. The deputy commissioner's principal contention is that the statute does not allow an exemption for only a part of a building. His position is that by reason of the wording of clause (b) of subsection (B) the entire building must qualify for a lessee's claim of exemption, or no exemption is allowable in respect to the building. As an alternate proposal, the deputy tax commissioner contends that even if an apartment in a cooperative apartment building on leased land could qualify for a home exemption, the particular apartments here involved can not qualify, for the reason appellees are not tenants in common within the meaning of paragraph (6) of subsection (A).

The factors to be considered in connection with appellant's main contention calling for the construction and application of clause (b) of subsection (B) are distinct from those bearing on the construction and effect of paragraph (6) of subsection (A). The two provisions of the

statute should first be considered separately before attempting to ascertain their combined effect. Considerable confusion in some of the briefing in this case has resulted from the failure to present argument on that basis. From our analysis, paragraph (6) of subsection (A) can not directly affect the meaning to be given to the word "home" as it is limited by clause (b) of subsection (B) of the statute. A brief review of the legislative history of the provisions relating to home exemption for lessees should make the point clear.

This court held in *In Re Taxes Henry A. White,* 33 Haw. 214, that a home exemption was not available to a lessee who occupied a one story dwelling as his home on private land held under a 30-year lease which gave the lessee the right of removal of improvements at the end of the term and required him to pay real property taxes. That decision was rendered in 1934. The law then in effect was, in material respects, comparable to the provisions of the law under consideration, with the exception that the only specific provision relating to taxation of leased property pertained to government leases under Act 40, 2d Sp. S. L. 1932, Section 22, reading: "The real property shall be assessed in its entirety to the owner or owners thereof. For the purposes of this Act, life tenants, executors, administrators, trustees, guardians or other fiduciaries and lessees holding under any government lease or license may be considered as owners during the time any real property is held or controlled by them as such."

After the *White* decision, bills for extension of home exemptions to home owners on leased land were introduced regularly in the legislative sessions until 1949, when, by the enactment of Act 64, Sp. S.L. 1949, the legislature granted home exemption to lessees generally. This was done by amending the provisions on assessments (then existing as set out in Act 40, 2d Sp. S.L. 1932, Section 22,

quoted above in our reference to the *White* case), by adding the first paragraph set out in Section 5141, *supra,* and by amending the then existing last paragraph of Section 5149 to read as set out above in subsection (B) thereof. Before this amendment, what is now subsection (B) read: "For the purposes of this section, the word 'home' shall include the entire homestead when the same is occupied by the taxpayer as such and shall also include houses where the owner sublets not more than one room to a tenant, and also shall include premises held under an agreement to purchase the same for a home, where the agreement has been duly entered into and recorded prior to January 1 of the year for which the exemption is claimed, whereby the purchaser agrees to pay all taxes while purchasing the premises." In addition to the foregoing, Act 64 amended Section 5149 by adding the last two provisos now appearing in paragraph (5) of subsection (A), relating to the use of buildings and structures for drying coffee and the use of real property for commercial growing and marketing of flowers and plants.

What is to be noted from the foregoing review is that when the exemption for home owners on leased private property was first brought into the statute in 1949 there was no provision in the law pertaining to home exemptions for individuals who had homes on land owned or leased in common with others. This privilege was not granted until the enactment by Act 134, S.L. 1953, of the provisions now appearing as paragraph (6) of subsection (A). The proper approach to the determination of this case should therefore be, to first determine, independently of any consideration of paragraph (6), the meaning of the word "home" as it is limited in respect to a leasehold by clause (b) of subsection (B), and then, to consider whether the legislature intended to modify such meaning by the subsequent enactment of paragraph (6).

In construing the provisions under consideration we do so on the basis that, "Words in a statute are to be taken in their ordinary and familiar signification, and regard is to be had to their general and popular use. The court will presume that they were used to express their meaning in common usage." *Advertiser Pub. Co.* v. *Tax Com'r Fase,* 43 Haw. 154, 160. As stated in *Stevenson* v. *Board of Adjustment,* 230 S.C. 440, 96 S.E. 2d 456 at page 462, "One of the primary rules in the construction of a statute is that the words used therein should be taken in their ordinary and popular signification, unless there is something in the statute requiring a different interpretation. Cooley Const. Lim. 58, 59; Potter, Dwar. St. 127, 622. This is really nothing more than a rule of common sense, for it must be supposed that the legislature, in enacting a statute, intended that the words used therein should be understood in the sense in which they are ordinarily and popularly understood by the people, for whose guidance and government the law was enacted, unless there is something in the statute showing that the words in question were used in some other sense." (See also, *Re Taxes, Pac. Refiners, Ltd.,* 41 Haw. 615, 624; *Kauai County* v. *Shiraishi,* 41 Haw. 156, 159; R.L.H. 1955, Section 1-17.)

There is no question but that in the ordinary sense of the word an apartment may be a "home." A home may be almost any place where a person resides, if it is "regarded by him as a fixed place of abode with present intention there to remain." *In Re Henderson,* 21 Haw. 104. In that general sense, the apartments of the appellees clearly can be considered to be their homes. By the same standard, some of the apartments let for rent by the other sublessees might just as properly be considered the homes of the occupants. But, obviously, as appellees concede, the home exemption would not be available in respect to

such apartments. However, the fact that the apartments of the appellees must be and are determined to be their homes within the ordinary meaning of the word is only the starting point. As appellant points up the issue, "This is not a case of merely determining the ordinary meaning of the word 'home' as section 5149 does not grant an exemption to any home but only to such homes that meet the qualifications set forth therein."

The prime requisite to qualify a lessee's home for the exemption is that it must be "a residential building on land held by the lessee * * * for residential purposes and owned and used as a residence by such lessee." The key words in this provision are "a residential building" and the question is, how do they limit the word "home" in respect to the exemption pertaining to leaseholds? The issue is thus first reduced to the question of whether the word "building" in clause (b) is to be taken as meaning the whole structure and only the whole structure of a building, as appellant contends, or may it be construed to mean and apply to each of the separate living units of a multiunit building, which, however argued or put, is in final analysis what appellees are contending for.

We believe the ordinary and popular significance of the words "building" and "apartment," and the difference in their meaning, are too well understood to require much elaboration to demonstrate that in common usage the former is not and may not be taken as a legitimate designation of the latter.

In popular use, at least, an "apartment house" and the "apartments" within it, are not the same. *McMillan* v. *Solomon*, 42 Ala. 356, 358. A "building" includes any structure, "designed to stand more or less permanently, and covering a space of land for use as a dwelling, storehouse, factory, shelter for beasts or some other useful purpose." *Commercial Casualty Ins. Co. of Newark, N. J.*

v. *Adkisson,* 152 Okla. 216, 4 P. 2d 50, 53. In normal usage the word "building" includes the whole structure—"the basement as well as the garret and it necessarily includes all space within the walls from the basement to the garret." *State* v. *Gates,* 197 Iowa 777, 197 N.W. 908; *Friedlander* v. *Citron,* 140 App. Div. 489, 125 N.Y. Supp. 510; 12 C.J.S., *Building,* p. 379. An apartment in a multiple unit building is but a subdivision thereof. To be a "building," the apartment would have to constitute the whole structure. As stated in *People* v. *Keller,* 96 Misc. 92, 161 N.Y. Supp. 132 at page 135, respecting a room in relation to a building, "A room, whether it be a concert-room or other room, is a subdivision of a building, or the building itself where the structure contains but one room." Also applicable is the comparison made between the words "apartment house" and "flat" in *Kenwood Land Co.* v. *Hancock Inv. Co.,* 169 Mo. App. 715, 155 S.W. 861 at page 864, as follows: "* * * Strictly speaking, a flat is one floor or portion of a house which forms a complete residence in itself. Therefore the term 'flat' is not synonymous with 'apartment house.' The latter term connotes an entire building; while the former means only the separate residential portions inside the building. * * *."

Clause (b) of subsection (B) qualifies the word "home" and, therefore, the home exemption, to include only *"a residential building"* on leased land. We think the use of the article "a" in conjunction with the adjective "residential" emphasizes the legislative intent to limit the exemption to a building constituting a single dwelling and to preclude its application to individual apartments in a multiple unit building.

In *Walker* v. *Haslett,* 44 Cal. App. 394, 186 Pac. 622, the court states at page 624: "* * * The covenant is that no building or structure whatever other than 'a first-class private residence' shall be erected or permitted on the

premises; the restriction is to 'a' private residence—in the singular, not the plural. There are authorities which hold that such a covenant forbids the erection on the premises of more than one dwelling house or residence, and therefore prohibits the construction of a double house, although it is all under one roof with a single entrance. * * * A building planned and designed for the residence or place of abode of two families cannot properly be described as one residence."

In *Killian* v. *Goodman*, 229 Mich. 393, 201 N.W. 454, the question before the court was whether the construction of a 33-family apartment house should be enjoined as being in violation of a restrictive covenant providing: "That no store, factory or building of any nature other than a residence shall be erected on said premises * * *." The court held the covenant applicable and enforceable, stating at page 455: "Counsel for the defendants contends that the term 'a residence' does not mean a single residence, but merely fixes the nature of the use of the property for residence purposes as distinguished from business or manufacturing purposes, and that it means a single home, a 2-family, 4-family, or a 33-family apartment. We think counsel is wrong. In *Schadt* v. *Brill*, 173 Mich. 647, 139 N.W. 878, 45 L.R.A. (N.S.) 726, this court held that the words 'a dwelling house,' used in a restrictive covenant, mean a single dwelling house. If a dwelling house means a single dwelling house, why does not a residence mean a single residence? The letter 'a' has some significance before the word 'residence.' A horse means one horse, a single horse; it does not mean a team or 33 horses. So a residence means one residence, a single residence, not 33 residences. Giving to the words used in these restrictions their ordinary commonly understood meaning, 'a dwelling house' means one single dwelling house, and 'a residence' means one single residence." We fully agree with the

analysis and reasoning of the Michigan court. Its ruling is equally applicable to the construction of the words under consideration in this case, particularly since, as is discussed later herein, we are obligated to construe them strictly. See also *Taylor* v. *Lambert,* 279 Pa. 514, 124 Atl. 169; *Gerstell* v. *Knight,* 345 Pa. 83, 26 A. 2d 329; *Bailey* v. *Jackson-Campbell Co.,* 191 N.C. 61, 131 S.E. 567; 14 A.L.R. 2d 1376 at 1393.

In the above connection it might also be noted that under clause (b) the home to which the exemption can apply is not only limited to "a" residential building, with the implications from the use of the article "a" above discussed, but that the singular aspect thus indicated is carefully preserved and strengthened by the remaining language of the clause which specifies that the building be on land held by "the" lessee under "a" lease, and that it be owned and used as "a" residence by "such" lessee. The language is plain and if taken at face value quite positively reveals an intendment that there can be but one home exemption for any leasehold.

It is our opinion therefore that, in the setting of clause (b), the words "a residential building," taken in their ordinary and familiar significance mean a single building, in its entirety, and cannot properly be taken to mean an apartment in a multiple unit building. Lessees' apartments therefore do not come within the scope of the term "home" as it is limited by clause (b) unless there is something in the statute showing that the legislature did not intend to use the words of the clause according to their ordinary meaning. Appellees have not persuaded us that there are other provisions in the statute to warrant such a conclusion. We detect none. On the contrary we believe there are features of the statute which, to some degree, tend to confirm the foregoing construction of clause (b).

Under paragraph (5) of subsection (A) where a

portion of the premises on which a person lives is used for commercial purposes, no exemption is allowed for that portion of the premises, but the exemption is still available to the remaining portion of the premises used exclusively as a home. As far as a unit of land is concerned, the premises may be divided into exempt and nonexempt parts. However, by the provisos to that paragraph, when any portion of a building or structure is used for commercial purposes, the exemption is wholly denied in respect to the building or structure, except in the special instances of coffee drying and the growing, packing or processing of plants and flowers. We take this as some evidence of a general legislative intent that a building, unlike land, must be treated for tax exemption purposes as a whole, either totally exempt or not exempt at all.

A further indication of the intent of the legislature to treat a building, for all tax purposes, as a unit appears from consideration of R.L.H. 1945, Section 5146, which (as amended by Act 79, S.L. 1945) provides, in part, that "Buildings shall be valued and assessed each year upon the basis of the cost of replacement less proper depreciation due to age, condition and utility or obsolescence. The commissioner shall determine and require the use of averaged basic unit replacement cost factors." This section contemplates the assessment of the building as a whole, not by subdivisions thereof, and on the basis of the averaged basic unit replacement cost of the building, not on the replacement cost of the subdivisions thereof. If the legislature intended to permit the separation of a multiple unit building into its component parts, as is contended by appellees, we reasonably could expect the law to contain some provision prescribing the method and standards of assessment to be applied. The failure of the law to so provide is, we believe, further indication of legislative intent that for all tax purposes, including the ap-

plication of the exemption provisions, a building is to be treated as a single unit.

As has been noted, appellees also claim the benefit of clause (a) of subsection (B) which extends the definition of home in Section 5149 to "the entire homestead when the same is occupied by the taxpayer as such." Their argument in effect is that since the word "such" in the clause refers to "home," the construction made of clause (a) in *Wilson* v. *Kunewa, supra,* allowing a full tax exemption to each of 10 tenants in common living in the family home they inherited is equally applicable in the present case despite a material change made since that decision in the law pertaining to the manner of assessing property. The contention is without merit.

When *Wilson* v. *Kunewa* was decided, real property was assessed under a statute providing: "The interest of every person in any property shall be separately assessed." The law now is that: "Real property shall be assessed in its entirety to the owner or owners." Section 5141, *supra. Wilson* v. *Kunewa,* therefore, is no longer applicable. Furthermore, appellees have no standing under clause (a) since the exemption covered by it extends to the entire homestead—i. e., "The family residence, together with the land on which it is situated and the appurtenances connected therewith." 40 C.J.S., *Homesteads,* Section 1, p. 430. A lessee's exemption is confined to the tax assessed against a building and is not available for the tax assessed against the land demised by the lease. Exemptions for lessees are specifically and comprehensively covered by the provisions above discussed and consequently appellees are relegated to clause (b) of subsection (B) for the definition of "home" to be applied to their claims for exemption.

In addition to citing the two cases (*Lockhart* v. *Sasser, supra,* and *Person* v. *Levenson, supra*) appearing in the lower court's opinion in support of the proposition that

an apartment house can be a home or homestead, appellees cite *Brandenburg* v. *Country Club Building,* 332 Ill. 136, 163 N.E. 440; *Hunt* v. *Held,* 90 Ohio St. 280, 107 N.E. 765; *Charlotte Consolidated Construction Co.* v. *Cobb,* 195 N.C. 690, 143 S.E. 522; and *Jernigan* v. *Capps,* 187 Va. 73, 45 S.E. 2d 886; for the proposition "that the phrase 'a residential building' can include an apartment house." From the last case appellees quote: "Similarly, here, a building occupied by four families is no less 'a residential building' than one occupied by a single family."

Each of the four cases relied on by appellees involved the application of a particular restrictive covenant to the erection of an apartment building. In the *Jernigan* case, the restriction was that there could be only one residential building on the lot. In the *Brandenburg* case, the restriction limited the use of the premises to residential purposes. In the *Hunt* case the use was restricted to residence purposes only with a prohibition against the erection of a double or 2-family house. And in the *Charlotte Consol. Const. Co.* case, the limitation was to use for residential purposes, with a prohibition that there should not be at any time more than one residence or dwelling house on each lot. Under the particular facts and the covenant considered, it was held in each case that there was no violation of the restrictive covenant involved in it.

The four cases referred to by appellees do not appear to us to be much in point. In the first place, the issue in this case is quite different from that considered in the cited cases. Our problem is not whether an apartment house may be considered a residential building or dwelling house, since, even assuming that it may be so considered, we obtain no answer in this case by reason of "each home being located in a 'residential building.'" The question rather is whether each of appellees' apartments may be considered to be "a residential building" under the statute.

538

In the second place, what we are dealing with is the application of a tax statute—not the application of restrictive covenants in a deed.

The application of restrictive covenants calls for a liberal construction in favor of the grantee and against the grantor. That was the rule of construction applied in the cases cited by appellees. "They are to be construed most strictly against the grantor and persons seeking to enforce them, and substantial doubt or ambiguity is to be resolved in favor of the free use of property and against restrictions. * * *." *Jernigan* v. *Capps, supra,* at p. 889. "It is a well-settled rule that in construing deeds and instruments containing restrictions and prohibitions as to the use of property conveyed all doubts should be resolved in favor of the free use thereof for lawful purposes in the hands of the owners of the fee." *Hunt* v. *Held, supra,* at p. 766. "Restrictive covenants ought not to be expanded, but rather buckled in against those claiming their benefit and in favor of free and unrestricted use of property." *Charlotte Consol. Const. Co.* v. *Cobb, supra,* at p. 524.

In this case the approach to and the leeway permitted in determining the meaning to be attributed to the words under consideration are entirely different from that of the cited cases. The rule of construction applicable in this case requires that the exemption provisions be strictly construed. The burden is on the appellees to clearly demonstrate that their apartments are exempt and any doubt on that score must be resolved against them.

In *In Re Taxes Henry A. White, supra,* it is stated at page 218: "It is a well-known rule of law applicable here that exemptions from taxation must be strictly construed against the exemption. *Berryman* v. *Board of Trustees of Whitman College,* 222 U.S. 334. And it is also fundamental that the burden of proof is upon the party claiming an exemption to make it entirely clear that by contract or

otherwise the property is not subject to taxation. *Metropolitan St. Ry. Co.* v. *New York,* 199 U.S. 1. The rule also is, exemption from taxation is never to be presumed. The legislature itself cannot be held to have intended to surrender the taxing power unless its intention to do so has been declared in clear and unmistakable terms. *St. Louis* v. *United Ry. Co.,* 210 U.S. 266, 275." More tersely, from *Bank of Hawaii* v. *Wilder,* 8 F. 2d 845 (9th Cir.), at page 846, "the rule is elementary that an exemption from taxation under legislative authority 'must be plainly and unmistakably granted; it cannot exist by implication only; a doubt is fatal to the claim.' " *In re Perry Tax Appeal,* 36 Haw. 340, 346; *In re Yerian,* 35 Haw. 855, 875; *Re Excise Tax Rob't Hind, Ltd.,* 34 Haw. 40, 42.

Whatever reliance might otherwise have been placed on the authorities cited by appellees is practically eliminated by reason of the difference between the rule of construction followed in those cases and the rule we are required to adhere to in this case. The great difference in results that may be obtained in the construction of words and terms, depending on which of the two rules is applied, is aptly demonstrated by comparing *Lockhart* v. *Sasser, supra,* with *Overstreet* v. *Tubin,* 53 So. 2d 913, Fla., from the same jurisdiction.

In the *Lockhart* case the court held that an entire apartment house containing six apartments, one of which was occupied by the owner as his home, constituted the homestead of the owner. In the *Overstreet* case the issue presented was quite similar to that before us, namely, whether each owner of a divided interest in a duplex apartment house was entitled to the homestead tax exemption allowed by the Florida Constitution. The court recognized that the determination of the question before it involved "a conflict between the benevolent policy of this state towards homesteads, on the one hand, and the obligation

of the home owner to contribute his fair share towards the support of his government to whose protection he must look for the full enjoyment of his home, on the other hand." (p. 914). It resolved the conflict in favor of strict construction by adopting and applying the rule that: "Exemptions from taxation, whether stated in the Constitution or in statutes, are to be construed against the claimant and in favor of the taxing power in cases of doubt," and held against the allowance of the exemptions as claimed, stating: "We think, then, that the only reasonable interpretation of the words 'dwelling house,' as used in Section 7 of Article 10, is that the whole structure of a multiple dwelling house, rather than each separate unit thereof, is meant; and it follows, therefore, that each owner of a separate unit is entitled to claim only his proportionate part of the $5,000 tax exemption, based on his proportionate part of the assessed valuation of the entire structure." (p. 915).

In accordance with the foregoing, it is our conclusion that the proper construction of Section 5149, made without reference to paragraph (6) of subsection (A), permits only one exemption for an entire building on leased property and does not allow the exemption for individual apartments in an apartment building. The question remaining for consideration is therefore: When the legislature incorporated paragraph (6) of subsection (A) into Section 5149 by Act 134, S.L. 1953, did it intend to modify the existing law in that respect? We are of the opinion that no such effect was intended.

We repeat the wording of paragraph (6) : "That where two or more individuals in common own or lease land on which their homes are located, *each home, if otherwise qualified for the exemption granted by this section, shall receive the exemption.*" The provision seems almost self-explanatory.

Paragraph (6) is worded to apply to tenants in com-

mon of land, not of buildings. It does not specify, or attempt in any way to specify, the qualifying requirements for the exemption of a home on land held by two or more individuals in common. Under the clause, "if otherwise qualified for the exemption granted by this section," the requirements to qualify for the exemption are left for determination by reference to the other provisions of Section 5149. All paragraph (6) purports to do, as far as a lessee is concerned, is to remove the restriction previously existing which limited the exemption to one dwelling on a given parcel of leased land and to permit multiple home exemptions where tenants in common establish their individual homes on land they lease in common. Paragraph (6), in effect, permits tenants in common who have arranged among themselves for the allotment of particular individual homesite areas within the parcel held by them in common to stand in the same position in respect to the statutory home exemption as if each of their homes were located on a separate parcel of land held under lease by the home owner individually and in his own right. The exemption so allowed to such a lessee tenant in common, however, is available only if his home is *"otherwise qualified for the exemption"* under Section 5149. So that as far as a separate home of a lessee on land held in common with others is concerned, it is implicit in the language under consideration that all the requirements of Section 5149, including the conditions set out in clause (b) of subsection (B), have to be met, in the same manner and to the same extent as is required of a lessee whose home is on a parcel of land demised to him individually. This interpretation finds confirmation in the legislative committee reports stating the purpose of the 1953 amendment.

Act 134 was Senate Bill No. 170. The report on it by the Committee on Ways and Means contained the following: "The purpose of this bill is to provide that where two

or more individuals own or lease a parcel of land in common upon which each of the individuals have separate homes that a home exemption would be allowed on each home. At present the entire parcel is only entitled to one home exemption. * * *." (Stand. Comm. Rep. No. 133, Senate Journal 1953, pp. 278-279.) The report of the Finance Committee of the House on the same bill states, in part: "The purpose of this Bill is to allow home exemption on homes which are built upon a parcel of land owned in common by two or more individuals and wherein each of the individuals have separate homes. The existing statute provides only one home exemption regardless of the number of homes standing upon the entire parcel of land. * * * At present, the law allows an exemption on a home on leased land. We see no good reason why this exemption applied on a single home should not be applied to a number in excess of one home which stand on the same parcel of land." (Stand. Comm. Rep. No. 640, House Journal 1953, p. 689.)

Since we have reached our decision that the appellees are not entitled to home exemptions for or on account of their respective apartments in The Oahuan Apartment Hotel on the basis that a lessee's exemption applies and is available only to a building consisting of a single residential unit, there is no necessity of determining the point raised by appellant on whether appellees qualify as tenants in common under paragraph (6) of subsection (A). Also, in view of the disposition made of this appeal, there is no reason for considering several other issues incidentally raised and urged by the deputy tax commissioner.

Reversed.

*Shiro Kashiwa,* Attorney General, and *Nobuki Kamida,* Deputy Attorney General, for appellant.

*Frank D. Padgett (Robertson, Castle & Anthony* of counsel), for appellees.