**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **WESLEY J. GARCIA**, aka Wesley J. Joseph, Defendant–Appellant

NO. 15747

(FC–CR. NO. 91–3173)

NOVEMBER 4, 1992

BURNS, C.J., HEEN, AND WATANABE, JJ.

## OPINION OF THE COURT BY WATANABE, J.

Defendant–Appellant Wesley J. Garcia (Defendant) appeals his conviction of Abuse of a Family or Household Member, on the ground that there was insufficient evidence at trial to conclude that he resided in the same dwelling unit as the complainant, a material element of the offense. We affirm.

### FACTS AND PROCEDURAL HISTORY

Defendant lived with his wife, brother, father, sister, and nephew in a three–bedroom house in Nanakuli. Connected to this "main house" was a one–bedroom extension, where Defendant's

son and daughter–in–law (Daughter–in–law) lived with their two children. Defendant was not on speaking terms with his son; therefore, while the two living quarters were connected, Defendant rarely set foot into his son's part of the house.

On July 10, 1991, during an argument involving various family members, Defendant stormed into his son's part of the house and hit Daughter–in–law, giving her a black eye. Daughter–in–law promptly called the police, who arrested Defendant and charged him with Abuse of a Family or Household Member, a violation of Hawai'i Revised Statutes (HRS) § 709–906 (1985 and Supp. 1991).

Following a jury–waived trial, the trial court convicted Defendant and sentenced him to serve two days in jail, attend domestic violence counseling, and remain in counseling until clinically discharged. Defendant's timely appeal followed.

## DISCUSSION

HRS § 709–906 (1985), which sets forth the offense of Abuse of Family and Household Members, provides in relevant part that:

> (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member, . . .

> For the purposes of this section, "family or household member" means spouses or former spouses, parents, children, and persons jointly residing or formerly residing in the same dwelling unit.

At trial, it was undisputed that Defendant physically abused Daughter–in–law. The sole issue before the trial court was whether Defendant and Daughter–in–law resided in the same dwelling unit.

It is Defendant's position on appeal that the trial court erroneously concluded that he and Daughter–in–law were "residing in the same dwelling unit." Defendant argues that he and Daughter–

in–law lived in separate living quarters, with separate entrances accessed by separate keys. He further maintains that a curtain divided the two living quarters and there was minimal contact between the families living on either side of the curtain. Defendant thus urges us to reverse his conviction.

## I.

The term "dwelling unit," for purposes of applying HRS § 709–906, is not defined. However, HRS § 1–14 (1985) requires that in the construction of statutes, "[t]he words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning." As the Hawai'i Supreme Court explained in *In re Taxes of Johnson*, 44 Haw. 519, 356 P.2d 1028 (1960):

> One of the primary rules in the construction of a statute is that the words used therein should be taken in their ordinary and popular signification, unless there is something in the statute requiring a different interpretation. This is really nothing more than a rule of common sense, for it must be supposed that the legislature, in enacting a statute, intended that the words used therein should be understood in the sense in which they are ordinarily and popularly understood by the people, for whose guidance and government the law was enacted, unless there is something in the statute showing that the words in question were used in some other sense.

44 Haw. at 530, 356 P.2d at 1034 (quoting from *Stevenson v. Board of Adjustment*, 230 S.C. 440, 96 S.E.2d 456, 462 (1957) (citations omitted)).

The word "dwelling" is defined in Webster's New World Dictionary 436 (2d Coll. ed. 1984) as "a place to live in; residence; house; abode." The word "unit" has numerous definitions in the

same dictionary. However, the only definition that has any significance when used in relation to the word "dwelling" is the following: "a single residence, as an apartment, that is part of a complex [a rental *unit*]." *Id.* at 1552. The term "dwelling unit," as used in the context of HRS § 709–906, would thus be ordinarily and popularly understood by the general public to mean a single residence, house, abode, or place in which members of a family or household live together.[1]

Factors which are relevant in determining whether members of a family or household are "residing in the same dwelling unit" include: the layout of the dwelling unit; how different residents enter the dwelling unit or different parts thereof; who pays for the mortgage, rent, utilities, or other expenses of the dwelling unit; what common areas of the dwelling unit are shared; what the mailing addresses of the different occupants of the dwelling unit are; and whether there are separate phone numbers for different residents of the dwelling unit.

We therefore review the trial evidence in the instant case in light of these factors.

## II.

The testimony at trial revealed that the residence in question was owned by Defendant's sister, Jessie, and was originally a

---

[1] We note that the legislature has defined "dwelling" or "dwelling unit" for purposes of interpreting other statutes. For example, HRS § 708–800 (Supp. 1991) defines "dwelling," in the context of chapter 708 of the Penal Code relating to offenses against property, as "a building which is used or usually used by a person for lodging." Also, HRS § 521–8 (1985), which Defendant suggests is a helpful "legislative pronouncement as to the intended breadth of the term," defines "dwelling unit," for purposes of construing the Residential Landlord Tenant Code, as "a structure, or part of a structure, which is used as a home, residence, or sleeping place by one person or by two or more persons maintaining a common household, to the exclusion of all others." While neither of these definitions apply to Penal Code violations under HRS chapter 709, they are consistent with the ordinary and popular meaning of the term.

three–bedroom, single–house dwelling. However, an extension to the house was subsequently constructed, consisting of a bedroom, parlor, and bathroom. Daughter–in–law, her husband (Defendant's son), and their two children lived in the extension. Defendant, his brother, his father, his wife, Keno, his sister, Jessie, and Jessie's son lived in the main part of the house.

The occupants of both parts of the house shared the same address and used the same mailbox. One water main, one electrical box, one water heater, and one phone number served both parts of the house. While Defendant paid the water and phone bills, Jessie paid for all of the other utilities. There is absolutely no evidence that Daughter–in–law or her husband paid any rent for use of the extension or that they contributed in any way to the expenses of maintaining the main part of the house or the extension.

There was evidence that a curtain served as a divider between Jessie's bedroom, which was in the main part of the house, and the parlor, which was in the extension. However, the curtain was always left wide open and Daughter–in–law and her children went over to the main part of the house "all the time." Transcript at 50.

Although there was evidence that the extension and the main part of the house had separate entrances which could be accessed by separate keys, it is not clear that these keys opened different locks. When the trial court asked Daughter–in–law whether she and Defendant shared "separate or common entrance[s]," she responded: "I can go into the other side and I can go out through my side." Id. at 21.

The testimony at trial also revealed that the occupants of both parts of the house shared the same kitchen, the same food, and the same meals, although Daughter–in–law and her husband did not "sit down like a family to eat" with Defendant and his wife. They ate "whenever." Id. at 15–16.

Officer Park, the investigating police officer, described the house as being a "single family dwelling." Id. at 30. He also stated that during his investigation, Jessie, the owner of the house, told

him that "they all live together in one house." *Id.* at 34. He further testified that he did not see any separate accommodations during his investigation and didn't recall seeing a curtain separating the two parts of the house.

On appeal of a conviction, "the test to ascertain the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact." *State v. Tripp*, 71 Haw. 479, 483, 795 P.2d 280, 283 (1990). "Even if it could be said that the conviction is against the weight of the evidence, as long as there is substantial evidence tending to support the requisite findings for conviction, the trial court's determination will be upheld." *State v. Halmos*, 70 Haw. 14, 16, 755 P.2d 1226, 1227 (1988). "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to reach a conclusion." *State v. Lima*, 64 Haw. 470, 475, 643 P.2d 536, 539 (1982).

Measured against the foregoing standard, there is clearly substantial evidence to sustain Defendant's conviction and support the trial court's finding that Defendant was "residing in the same dwelling unit" as Daughter–in–law. The occupants of both parts of the house were members of an extended family who lived together as a common household. The fact that Defendant and Daughter–in–law's husband did not get along and avoided each other did not create a boundary sufficient to divide the house into two distinct dwelling units.

To uphold Defendant's distinction and overturn the trial court's ruling would be clearly inconsistent with the purposes and policies which the legislature sought to achieve when it expanded the protections of HRS § 709–906 to include family and household members residing in the same dwelling unit:

> Your [Conference] Committee is concerned with effectively addressing and combatting family violence.

The ramifications of family violence spread far beyond the confines of the family. Children who are the victims of or are witnesses to, violence learn to view it as accepted and normal behavior. They may perpetuate the violence as adults.

Presented with this problem, your Committee, upon further consideration, amended the bill to broaden its applicability to family and household members. "Family and household members" is defined in the bill as "spouses, former spouses, parents, children, and persons jointly or formerly residing in the same dwelling unit." Your Committee believes that extending the protection of this criminal statute to family and household members will assist in mitigating family violence and its effect on the community.

Sen. Conf. Comm. Rep. No. 6, in 1985 Senate Journal, at 848; Hse. Conf. Comm. Rep. No. 15, in 1985 House Journal at 887–88.

## CONCLUSION

Accordingly, we affirm the Judgment and Sentence of the Family Court of the First Circuit, filed on November 7, 1991.

*Patsy M. Kim*, Deputy Public Defender, on the briefs for defendant–appellant.

*Alexa D. M. Fujise*, Deputy Prosecuting Attorney, and *Ian E. Cate*, Law Clerk, on the brief for plaintiff–appellee.